## Whitewater Commercial & Savings Bank, Appellant, v. United State Bank of Crystal Lake, Appellee.

### Gen. No. 6,945.

1. BANKS AND BANKING—*necessity that acceptance of check be in writing.* Under sections 131, 184, 188, of the Negotiable Instruments Law (Cahill's Ill. St. ch. 98, ¶¶ 153, 206, 210), there can be no implied acceptance of a check and the acceptance must be in writing.

2. BANKS AND BANKING—*right of bank to decline to pay unaccepted check.* A bank has a right to decline to pay a check which it has not accepted.

3. BANKS AND BANKING—*right of bank to apply upon own account proceeds of checks deposited generally.* A bank has a right to collect checks deposited with it generally and apply the proceeds upon its own account against the depositor.

4. BANKS AND BANKING—*right of bank as to checks deposited as special fund.* If a bank depositor deposits checks with the bank as a special fund to pay another check outstanding, and so informs the bank, it cannot credit the deposit to the depositor's general account

and pay it out on other checks nor apply it to its own account against the depositor.

5. BANKS AND BANKING—*sufficiency of evidence to sustain finding that special deposit was not made.* In an action against a bank for refusal to pay a certain check, evidence examined and *held* to sustain the finding that the drawer had not made a special deposit to cover such check.

Appeal from the Circuit Court of McHenry county; the Hon. CHARLES H. DONNELLY, Judge, presiding. Heard in this court at the April term, 1921. Affirmed. Opinion filed February 23, 1922.

L. D. LOWELL and D. T. SMILEY, for appellant.

F. B. BENNETT and CHARLES P. BARNES, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

This is an action of assumpsit brought in the circuit court of McHenry county on December 12, 1918, by the Whitewater Commercial & Savings Bank, of Whitewater, Wisconsin, against the United State Bank of Crystal Lake, in McHenry county. Plaintiff filed a declaration and an affidavit of claim therewith. Defendant filed a plea of the general issue and an affidavit of merits therewith. Afterwards plaintiff filed a bill of particulars. A jury was waived, and proofs were heard on August 6, 1920, and the cause was then postponed at the request of the plaintiff to secure the testimony of William Nieman for plaintiff. On December 23, 1920, the case was called for remaining proofs. Plaintiff then asked leave to file three additional counts and an amended bill of particulars and said motion was argued and taken under advisement and the proofs were closed. On December 28, before there was any ruling entered of record, plaintiff filed three additional counts and another affidavit of merits and an amended bill of particulars. On December 30, leave was given to file said additional counts and amended bill of particulars and defendant filed an-

28     Appellate Courts of Illinois.

Whitewater C. & S. Bk. v. U. S. Bk. of Crystal Lake, 224 Ill. App. 26.

other plea of the general issue with an affidavit of merits and there was a finding and a judgment for defendant, from which plaintiff appeals. It is not argued that the court committed any error in ruling on the admission of evidence. No propositions of law or findings of fact were submitted to the court. The only question before this court is whether, under the evidence, and the law applicable thereto, the issues submitted by the pleadings were correctly determined by the court.

The original declaration contained the common counts only. They were limited, however, by the affidavit of claim filed therewith, which stated that the plaintiff's demand is for money due from defendant to plaintiff on a check drawn on defendant by William Nieman and cashed by plaintiff and forwarded in the usual course of business to defendant; that there were funds upon which said check was drawn in defendant's bank with which to pay the same when it was forwarded but defendant refused payment, and that there was due from plaintiff to defendant, after allowing all just credits, deductions and set-offs, $5,375.50. The plea of the general issue was accompanied by an affidavit of merits, which stated that defendant was engaged in banking at Crystal Lake, and that affiant was the cashier thereof and that defendant was not, at the time of making the affidavit nor at the commencement of the suit, indebted to plaintiff on account of the check described in plaintiff's affidavit of the amount due, and that there were no funds of Nieman in defendant's bank to the credit of Nieman subject to said check or with which to pay it, either at the time when the check was presented to defendant or at the time when defendant refused payment thereof, and that defendant never accepted said check or certified the same. A bill of particulars was afterwards filed by plaintiff. The clerk recites that it was filed November 21, 1921, but it bears the file

mark, November 21, 1919. Said bill of particulars recites said check and says it was dated September 14, 1918, drawn on said bank, signed by Nieman and payable to Albert N. Hanson, and by Hanson indorsed and presented to plaintiff and cashed by plaintiff and then by plaintiff forwarded through its correspondent at Chicago to defendant for payment and by said correspondent, the National City Bank of Chicago, Illinois, forwarded to defendant and by defendant returned unpaid and protested, and by said correspondent returned to plaintiff; that on September 26, 1918, said check was by plaintiff again forwarded to defendant through said correspondent and again returned to plaintiff; that on October 8, 1918, said check was again forwarded to plaintiff through said correspondent and that the same was received by defendant on October 10, 1918, and held by defendant without protest until October 14, 1918, and on said last-named day returned to plaintiff through said correspondent. The bill of particulars further stated that on October 14, 1918, and at the time said check was returned by defendant, defendant had on deposit to the credit of Nieman over $6,000, which was more than sufficient to pay said check. The issue to be tried was limited to that stated in those two affidavits and the issues remained the same on August 6, 1920, when the hearing of proofs was begun. Plaintiff's claim so pleaded was only that when the check was presented there were funds held by defendant subject to said check sufficient to pay the check but that defendant refused payment.

Other issues were presented by the additional pleas permitted by the order of December 30, 1920. The first additional count recited the drawing of said check by Nieman, payable to Hanson, and by Hanson indorsed to plaintiff and by the plaintiff cashed and forwarded to defendant for payment on September, 20, 1918, and its return to plaintiff, unpaid and protested,

30 APPELLATE COURTS OF ILLINOIS.

Whitewater C. & S. Bk. v. U. S. Bk. of Crystal Lake, 224 Ill. App. 26.

and omitting all reference to the second sending of the check by plaintiff to defendant, it recited the forwarding of said check on October 10, 1918, to defendant through its correspondent, and that defendant retained said check from October 10 to October 14, and that between those dates Nieman placed in defendant bank a sufficient sum, to wit, $6,000, specially to pay said check; that said check was in the possession of defendant when said special deposit was made for the sole purpose of paying said check, and that defendant, through its officers, knew that fact; that said check was not protested but was retained by defendant when said special deposit was made by Nieman to pay the same and that it became the duty of defendant to pay the amount of said check to plaintiff out of said special deposit; yet defendant wrongfully and negligently refused to pay the check out of said special fund, and ever since has so refused, and thereby said sum was wholly lost to plaintiff. The second special count recited the facts about the receipt of the check by defendant the last time, and that during all the time between October 10 and October 14, there were sufficient funds to the credit of Nieman in defendant bank out of which the bank could pay the check, as defendant well knew, and that thereby defendant constructively or impliedly accepted said check for payment and should have paid the same, but wrongfully and negligently refused to pay it although so accepted. The third special count recited the facts concerning the drawing of said check and its being forwarded for payment the first time and the last time, and its retention by defendant from October 10 to October 14, and that during that time defendant had a sufficient sum on deposit to the checking account of Nieman to have paid it, and the bank well knew that fact; that on October 14, defendant returned the check to plaintiff through its Chicago correspondent and wilfully refused to pay the check, though it had been impliedly

accepted for payment by its retention by defendant during said period, and that it became the duty of the defendant to pay said check and it refused to do so, and thereby the amount of said check and the use thereof were lost to plaintiff. The affidavit of merits attached to said additional counts stated that the additional counts were true and that a special fund was on deposit in defendant's bank to pay said check when it was so forwarded to defendant; that defendant accepted said check for payment and afterwards refused to pay the same without just cause; and that when said check was forwarded to defendant, defendant had sufficient funds with which to pay it and that defendant owed plaintiff the amount of said check. With the said pleadings was also filed an amended bill of particulars to the like effect. With defendant's plea of nonassumpsit to the said three additional counts was an affidavit of merits by the cashier of defendant, which stated that no special fund was ever placed on deposit with defendant with which to pay said check; that said defendant never accepted said check; that defendant never had sufficient funds of Nieman in said bank subject to his check with which to pay the same at any time when said check was in defendant bank; and that in no event is defendant liable to plaintiff on account of said check.

For many years it was the law of this State, contrary to the commercial law in many other States of the Union, that the delivery of a check by a depositor upon his banker for value transfers to the holder of the check the legal title to so much of the deposit as the check calls for and that the banker, on its presentation, becomes liable to the owner of the check for the amount thereof if he has funds of the drawer sufficient to meet the same. This rule is stated in *Munn v. Burch,* 25 Ill. 35, and other cases. But by the Negotiable Instruments Law, in force July 1, 1907, this State was placed more in accord with the com-

32 . Appellate Courts of Illinois.

Whitewater C. & S. Bk. v. U. S. Bk. of Crystal Lake, 224 Ill. App. 26.

mercial law of other States. Section 188 thereof (Cahill's Ill. St. ch. 98, ¶ 210) provides that a check does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check. This check was never certified. Section 184 (Cahill's Ill. St. ch. 98, ¶ 206) declares a check to be a bill of exchange and makes the provisions of the Act applicable to a bill of exchange payable on demand also applicable to a check. Section 131 (Cahill's Ill. St. ch. 98, ¶ 153) says the acceptance of a bill "must be in writing and signed by the drawee." This check was not accepted in writing. We cannot agree with plaintiff's argument that there can be an implied acceptance of a check. The requirement that the acceptance must be in writing and signed by the drawee was intended to prevent any inference of an acceptance from conduct and loose words, differently remembered or detailed by different witnesses. A construction which would permit an acceptance to be established by a consideration of such evidence would destroy the wise and imperative provisions of the statute. We hold there could not be and was not an implied acceptance of this check. The first time the check was sent to defendant it was duly protested. The second and third times defendant had the check, no protest was made because plaintiff by 'phone requested that the check be held and this excused any necessity for protest. Plaintiff was not harmed by the lack of a protest.

There was not on October 10, 11 or 12, 1918, a credit to Nieman in defendant bank sufficient to pay this check. On October 12, Nieman left several checks at the bank. It was the custom of defendant, when checks were presented to it on some other bank, as these were, which it thought of doubtful value, that it did not receive them on deposit or credit them to the depositor, but made a memorandum of them and

sent them out for collection, and credited them to the account of the party presenting them if and when they were in fact collected. The bank doubted whether these checks brought in by Nieman were collectible. They were on a bank or banks in Elgin in another county. A stenographer or clerk of defendant placed a list of these checks on a memorandum on her desk. It chanced that this paper on which this memorandum was made had also some printed matter relating to a deposit. When several days later Nieman was handed this slip with a statement of his account, he delivered it to plaintiff. It bore the date October 12, and an officer of plaintiff assumed that this was a deposit slip issued October 12 to Nieman and evidenced a credit to him of that amount on that day. This was incorrect. The slip was not delivered to Nieman on October 12, and was not intended to be. It was a mere memorandum belonging to defendant which showed the sums which might become a credit to Nieman if the checks were collected. There was not on October 12, which was Saturday, funds in the bank to the credit of Nieman sufficient to pay Nieman's checks.

Defendant held four judgment notes against Nieman for money loaned. On Saturday afternoon it took judgment on two of these notes. On Monday morning, immediately upon opening the bank, it mailed the Nieman check back to plaintiff through its Chicago correspondent from whom it had been received. Later that afternoon an officer of defendant drove to Elgin with the checks Nieman had left in the bank Saturday and with difficulty succeeded in collecting them and brought the proceeds back to the bank. Meanwhile two more judgments in favor of defendant had been entered by confession against Nieman on the remaining two judgment notes. These notes were not due by their terms, but they authorized judgments by confession thereon at any time after they were signed.

Monday afternoon defendant charged these judgments to Nieman's account and credited them with the avails of the checks collected in Elgin and this left but a small balance of credit to Nieman. Aside from the question of a special deposit to pay Nieman's check, defendant had a right to decline to pay this check, which it had never accepted, to the plaintiff and to collect the Elgin checks and apply the proceeds on the judgments it had against Nieman. It was optional with defendant whether it would accept the Nieman check and it did not do so.

If, however, the Elgin checks were delivered by Nieman to the defendant as a special deposit to pay Nieman's outstanding check and defendant was so informed, then we hold defendant could not credit that deposit to Nieman's general account and pay it out on other checks or apply it to what Nieman owed defendant on these judgments. We so held in *Eshbach v. Byers*, 164 Ill. App. 449. The debatable question in this case is whether Nieman did make such special deposits to the knowledge of defendant. There is evidence of conversations between Nieman and officers of defendant which tends to show such special deposit. There is evidence directly to the contrary. Plaintiff's evidence on this subject is chiefly from Nieman. His statements on direct and cross-examination were not in harmony. He was directly contradicted by other witnesses. The court saw the witnesses and heard them testify and had better opportunity than this court to determine which witnesses were telling the truth. Plaintiff's position is prejudiced by the fact that from the transaction in October, 1918, until December 23, 1920, plaintiff never claimed that there had been such a special deposit, but relied wholly upon its position that defendant was bound to pay the check when presented or while the defendant held it because it had sufficient funds on October 12, 1918, to pay it, and also upon its claim that there could be and was

an implied acceptance of the check.    The abstract of the evidence is not wholly satisfactory and we have read all the evidence in the record.    After considering it we cannot say that the court below should have found that Nieman made a special deposit in defendant bank to pay this check and that defendant knew that fact.

The judgment is therefore affirmed.

*Affirmed.*